UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAY EQUITY LLC, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Action No. 1:20-cv-10693-IT |
| | * |
| TOTAL MORTGAGE SERVICES, LLC, | * |
| STEVEN SIRMAIAN, and | * |
| DENISE PEACH, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

December 15, 2020

TALWANI, D.J.

On March 4, 2020, Plaintiff Bay Equity LLC ("Bay Equity") filed suit in Middlesex Superior Court against Defendants Total Mortgage Services, LLC ("Total Mortgage") and Total Mortgage employee Steven Sirmaian. Complaint, Bay Equity LLC v. Total Mortgage Srvs. LLC, No. 20-cv-10454 (D. Mass. March 6, 2020) ECF No. 6-1 ("First Action"). Total Mortgage and Sirmaian removed the First Action to federal court based on diversity jurisdiction and moved to vacate or alter a temporary restraining order ("TRO") entered *ex parte* by the state court judge. Emergency Motion to Stay or Modify the Temporary Restraining Order, Bay Equity LLC v. Total Mortgage Srvs. LLC, No. 20-cv-10454 (D. Mass. March 6, 2020) ECF No. 9. After an expedited hearing, this court granted the request to vacate the TRO and gave Bay Equity the opportunity to move for a preliminary injunction. Electronic Order, Bay Equity LLC v. Total Mortgage Srvs. LLC, No. 20-cv-10454 (D. Mass. March 9, 2020) ECF No. 20.

Instead of doing so, on March 19, 2020, Bay Equity filed another suit in Middlesex Superior Court alleging substantially the same claims brought in the First Action but this time

naming Total Mortgage employee Denise Peach, a Massachusetts resident. State Court Pleadings 35 [#3-1]. Bay Equity then dismissed the First Action, see Notice of Voluntary Dismissal, Bay Equity LLC v. Total Mortgage Srvs. LLC, No. 20-cv-10454 (D. Mass. March 20, 2020) ECF No. 23, and amended the complaint against Peach to add Total Mortgage and Sirmaian as defendants, see State Court Pleadings 3 [#3-1].

Total Mortgage, Sirmaian, and Peach removed the case to federal court, claiming diversity jurisdiction and alleging that the joinder of Peach was fraudulent. Notice of Removal [#3]. Defendant Peach subsequently moved to dismiss the complaint for fraudulent joinder, and Bay Equity moved to remand. For the following reasons, Defendant Peach's Motion to Dismiss for Fraudulent Joinder [#13] is ALLOWED, and Bay Equity's Motion to Remand [#20] is DENIED.

**I.     Factual Background**

*A.     The Amended Complaint*

The Amended Complaint [#3-1] alleges the following. Bay Equity is a limited liability company, whose members are residents of California. Am. Compl. ¶¶ 9, 15 [#3-1]. Total Mortgage is a limited liability company, whose members are residents of Connecticut. Id. at ¶ 10. The two companies are direct competitors in the retail mortgage lending industry. Id. at ¶¶ 2, 4. Sirmaian is domiciled in Derry, New Hampshire, and Peach is domiciled in Townsend, Massachusetts. Id. at ¶¶ 14–15.

Village Mortgage Company ("Village") was a regional mortgage lender operating in the Northeast. Id. at ¶ 3. Peach was a Regional Branch Manager in Village's Leominster, Massachusetts branch, while Sirmaian was a Producing Branch Manager in the Portsmouth, New Hampshire branch. Id. at ¶¶ 11-12, 42-43. On December 31, 2018, well before Bay Equity had

begun talks with Village about a potential limited sale of Village's assets, Peach, Sirmaian, and eleven other employees left Village to join Total Mortgage. Id. at ¶¶ 45-46. Bay Equity labels this departure a "raid" and alleges that it was a "coordinated lift-out[]" by Defendants. Id. at ¶ 44.

On April 14, 2019, shortly after Bay Equity and Village began talks about a potential limited sale of Village's assets, several additional employees left Village's branch in Portland, Maine, and joined Total Mortgage. Id. at ¶ 46. Bay Equity again alleges that this was a "coordinated lift-out" by Defendants. Id. at ¶¶ 44, 46. Bay Equity alleges on information and belief that Sirmaian and Peach acted out of personal retaliation and malice towards Village management. Id. at ¶ 48. Bay Equity does not allege that Defendants knew about the talks between Bay Equity and Village or that the employees who left Village were employees of, or had contracts with, Bay Equity.

In July 2019, more than six months after Peach and Sirmaian left Village, Bay Equity effected a limited asset purchase of Village and hired many of its remaining employees. Id. at ¶ 3. As a condition of employment, Bay Equity required many of the former Village employees to sign restrictive covenants that included a "no-raid" provision, a non-solicitation clause, and a non-disclosure clause covering Bay Equity's confidential information. Id. at ¶¶ 37–40. After the purchase, sixteen Bay Equity employees operating out of Bay Equity's Massachusetts and Connecticut branches left to join Total Mortgage, including nine on February 21, 2020. Id. at ¶¶ 51-52. Bay Equity alleges that Defendants coordinated the resignations of the sixteen former Bay Equity employees (the "Former Employees"), many of whom had signed agreements containing restrictive covenants with Bay Equity. Id. at ¶¶ 37, 52-53.

Bay Equity claims that, in addition to poaching its employees, Total Mortgage came to possess Bay Equity's confidential information, which former Bay Equity employees brought

3

with them when they switched jobs. Id. at ¶¶ 5, 18, 60–62. Several former Bay Equity employees then allegedly used this confidential information to move Bay Equity's borrowers over to Total Mortgage—including, in some cases, without the borrower's knowledge or consent—and to process loans for the borrowers. Id. at ¶¶ 64–66.

    B.    *Affidavits*

Peach states by affidavit that she was not involved in recruiting Bay Equity employees to Total Mortgage, had no knowledge of any contracts or agreements between those employees and Bay Equity, and has not received nor will receive any benefit or compensation as a result of former Bay Equity employees joining Total Mortgage. Peach Aff. [#15]. Total Mortgage's Chief Executive Officer, Scott Penner, also states by affidavit that Peach had no hiring responsibilities, was not involved in hiring any of the former Bay Equity employees, and received no compensation related to Total Mortgage's hiring of former Bay Equity employees. Penner Aff. [#16].

**II.**    **Discussion**

    A.    *Standard for Fraudulent Joinder*

Under 28 U.S.C. § 1441, a defendant may remove a civil action brought in a state court to federal district court if the district court has original jurisdiction. In this case, Defendants have asserted diversity jurisdiction as the basis for removal. Notice of Removal [#1]. Federal district courts have original jurisdiction over cases where the $75,000 jurisdictional threshold is met and where the matter in controversy is between citizens of different states. 28 U.S.C. § 1332(a)(1). "In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S.

546, 553 (2005). In addition, actions based on diversity jurisdiction may not be removed if any of the defendants are citizens of the state in which the action is brought. 28 U.S.C. § 1441(b)(2).

Here, Defendants acknowledge that Peach is a Massachusetts resident and that this would ordinarily thwart removal, but they contend that the court may disregard Peach's citizenship because she was fraudulently joined. Mot. to Dismiss for Fraudulent Joinder 9 [#13]. The doctrine of fraudulent joinder is an exception to the forum-state defendant rule, 28 U.S.C. § 1441(b)(2), that allows a federal court to disregard the citizenship of a defendant under certain circumstances. Specifically, removal is not defeated "where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted" against the forum-state defendant. Universal Truck & Equip. Co. v. Southworth–Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014). This means that "[a]n 'implicit finding' within a finding of fraudulent joinder . . . is 'that the plaintiff has failed to state a cause of action against the fraudulently joined defendant'"—in effect, the substantive standard for a motion to dismiss under Rule 12(b)(6).[1] In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig., 76 F. Supp. 3d 321, 333 (D. Mass. 2015) (quoting Phillips v. Medtronic, Inc., 754 F. Supp. 2d 211, 215 (D. Mass. 2010)) (citations omitted). There is one important procedural difference, though: "[i]n assessing a claim of fraudulent joinder, a court is not bound by the allegations in the complaint and may consider affidavits and other materials that bear on the

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6), this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiffs' favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). The complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

question of whether there is a reasonable basis for the joinder of a defendant." Id. (citing Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 5 (D. Mass. 2001)).

    *B.*    *Allegations Against Defendant Peach*

Bay Equity's Amended Complaint [#3-1] alleges three claims against Peach: tortious interference with contractual relations (Count I), civil conspiracy (Count VII), and unjust enrichment (Count VIII). The court considers each in turn to determine whether Peach has sufficiently demonstrated that there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action against her.

    1.    Tortious Interference with Contractual Relations

"Under Massachusetts law, a plaintiff bringing a claim of tortious interference with a contractual relationship must prove that (1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Hamann v. Carpenter, 937 F.3d 86, 90 (1st Cir. 2019). The dispute in this case is narrowly focused on the second element, specifically whether Peach recruited former Bay Equity employees knowing that their contracts contained a restrictive covenant.

The allegations in Bay Equity's Amended Complaint [#3-1] relating specifically to Peach are limited. Bay Equity alleges that Peach left Village at the same time as other employees, months before Bay Equity entered into talks with Village; that Peach expressed animosity towards Village's management; and that Peach and Sirmaian were instrumental in coordinating Village employees to leave Village (prior to Bay Equity's limited purchase of Village assets). Am. Compl. ¶¶ 45-49 [#3-1]. While these facts might arguably have some relevance if this dispute were between Village and Peach (and if Village employees had signed restrictive

covenants), they are of almost no relevance to the claims that Bay Equity seeks to bring against Peach relating to employees leaving Bay Equity.

Bay Equity's Amended Complaint [#3-1] states as to those employees that "[g]iven the timing of the resignations, which occurred serially and in groups, Bay Equity believes that Former Employees solicited and coordinated their resignations with each other, in violation of the no-raid provisions contained in their Employment Agreements, at Defendants' instruction and encouragement." Am. Compl. ¶ 52 [#3-1] (emphasis added). The Amended Complaint [#3-1] also asserts that, "[g]iven the history between Defendants and the Former Employees (at Village) and the coordinated nature of the raids, on information and belief, Defendants knew about the Former Employees' Employment Agreements (and the obligations set forth therein)" and that "Defendants induced those Former Employees to breach." Id. at ¶¶ 57, 84-86. These allegations are insufficient to defeat the fraudulent joinder motion.[2]

First, none of these allegations specify that Peach, as opposed to the other Defendants, knowingly encouraged or assisted Bay Equity employees in violating the terms of their contracts. Bay Equity argues that it is permitted at this stage to lump all the Defendants together. But where the inquiry is whether there is a plausible claim against Peach, specifically, the court finds the undifferentiated allegations against "Defendants" in the Amended Complaint [#3-1] insufficient to rebut Peach and Penner's uncontradicted affidavits disavowing her knowledge of the Former

---

[2] Sirmaian and Peach are identified separately in the Amended Complaint [#3-1] section entitled "Parties, Jurisdiction, and Venue," where Defendants allege that "Sirmaian has solicited Bay Equity employees including, on information and belief, at its Westford and Great Barrington, Massachusetts location (one of which is in Middlesex County)," and "Peach has solicited Bay Equity employees including, on information and belief, at its Westford, Massachusetts location (in Middlesex County)." Am. Compl. ¶¶ 11-12 [#3-1]. These conclusory allegations, made on information and belief, were presumably offered to establish venue and offer nothing to the factual account.

Employees' Employment Agreements and her involvement in recruiting the Former Employees. Peach Aff. ¶¶ 3-4 [#15]; Penner Aff. ¶ 3 [#16]. See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011) ("an adequate complaint must include not only a plausible claim but also a plausible defendant").

Second, even these more generalized statements are made on no more than Bay Equity's "belief" and with no detail. Notably, in the First Action, the court found that Bay Equity had failed to establish a likelihood of success on the merits where, *inter alia*, Bay Equity "had not identified any former Bay Equity employees hired by Total Mortgage who are subject to the restrictive covenants." Elec. Order, Bay Equity LLC v. Total Mortgage Srvs. LLC, No. 20-cv-10454 (D. Mass. March 9, 2020) ECF No. 20. The Amended Complaint [#3-1] does not rectify this deficiency, let alone offer any specific facts, rather than mere belief, to tie Peach to the alleged wrongdoing. The court therefore finds that Peach has shown by clear and convincing evidence that Bay Equity's tortious interference claim fails to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

    2.    Civil Conspiracy

To state a claim for civil conspiracy claim, "a plaintiff must demonstrate that a combination of persons acted pursuant to an agreement to injure the plaintiff." Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 415 (2002). "It is not sufficient to prove joint tortious acts of two or more persons"; rather, the plaintiff must demonstrate that the participants acted pursuant to an agreement. Id.

Bay Equity alleges that "Defendants each agreed to act together and in concert with one another, pursuant to a secretive, common plan, scheme, and design, to disrupt and injure Bay Equity's business, breach the Former Employees' Employment Agreements, misappropriate Bay

8

Equity's trade secrets, and ultimately divert business and referral sources from Bay Equity, all in knowing breach of the Former Employees' contractual, common law, and statutory obligations, as well as Defendants' common law and statutory obligations" and "[b]y their conduct described above, Defendants committed tortious acts in furtherance of their plan." Am. Compl. ¶¶ 134-35 [#3-1]. This is precisely the type of "threadbare recital . . . supported by mere conclusory statements" that does not satisfy the plausibility pleading standard. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). All Bay Equity has alleged is that Peach and Sirmaian were both motivated by personal animus towards Village and its management. Am. Compl. ¶ 49 [#3-1]. But even if both Peach and Sirmaian acted on that dislike, that is not sufficient to make out a claim of civil conspiracy. See Gutierrez, 437 Mass. at 415. Where Bay Equity has not alleged the existence of any agreement between Defendants, Peach has met her burden of demonstrating that the claim fails.

Defendants argue further that the conspiracy claim fails under the intracorporate conspiracy doctrine, which counsels that an agreement between or among agents of the same legal entity is not an unlawful conspiracy. Defs' Mem. 8 [#14] (citing Ziglar v. Abbasi, 137 S. Ct. 1843, 1867 (2017)). See also Copperweld Corp v. Independence Tube Corp., 467 U.S. 752, 769–771 (1984). In light of the above discussion, the court need not reach this argument. The court nonetheless notes Plaintiff's response. Plaintiff contends that "Defendants' scheme to damage Village's business (which later became Bay Equity's business) *predated* Peach's employment with Total Mortgage," and "one can reasonably conclude that any involvement by Peach in the lift-out of Bay Equity's employees would have been outside the scope of her employment at Total Mortgage." Opp. 19 [#24] (emphasis original). But if Peach's involvement in the conspiracy occurred before she was employed by Total Mortgage, it also occurred before

9

Bay Equity's Former Employees were induced to move to Total Mortgage. See Am. Compl. ¶ 45 [#3-1] (Peach leaves Village to work for Total Mortgage in December 2018); id. at ¶ 51 (Former Employees leave Bay Equity to join Total Mortgage between mid-2019 and March 2020); id. at ¶¶ 133-36 (conspiracy allegations as to "All Defendants"). Plaintiff's argument thus serves only to underscore that the factual allegations against Peach may relate to a dispute between Peach and Village or its management but provides no support for a conspiracy claim brought by Bay Equity.

        3.      Unjust Enrichment

"[T]o state a claim for unjust enrichment a plaintiff must prove (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable." Stevens v. Thacker, 550 F. Supp. 2d 161, 165 (D. Mass. 2008) (citing 12 WILLISTON ON CONTRACTS § 1479). In her affidavit, Peach states that she did not receive any "compensation, bonus, or other personal benefit as a result of any former Bay Equity employees joining Total Mortgage." Peach Aff. ¶ 5 [#15]. Penner's affidavit corroborates that Peach did not participate in recruiting Bay Equity employees and did not receive any compensation based on the hiring of such employees. Penner Aff. ¶ 3 [#16]. Bay Equity argues that Peach, as one of the defendants, "received a benefit in the form of Bay Equity's confidential information," and that Peach's use of that information is "unjust." Pl's Opp. 16 [#21]. But Bay Equity has not included Peach in its claims involving the misappropriation of confidential information nor alleged that she has received or used any such information. Peach has therefore shown by clear and convincing evidence that Bay Equity has failed to state a claim of unjust enrichment against her.

Where there is no reasonable possibility that the state's highest court would find that the Amended Complaint [#3-1] states a cause of action against Peach, removal is not defeated.

### III.     Conclusion

Accordingly, Defendant Peach's Motion to Dismiss for Fraudulent Joinder [#13] is ALLOWED, and Peach is dismissed as a defendant to this action. The court consequently retains jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and DENIES Bay Equity's Motion to Remand [#20].

    IT IS SO ORDERED.

December 15, 2020                                                                        /s/ Indira Talwani
                                                                           United States District Judge