# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BAY EQUITY LLC, *Plaintiff*, v. TOTAL MORTGAGE SERVICES, LLC and STEVEN SIRMAIAN, *Defendants*. | Civ. A. No. 1:20-cv-10693-IT |

**PLAINTIFF BAY EQUITY LLC'S FIRST REQUEST FOR THE PRODUCTION OF
DOCUMENTS TO DEFENDANT TOTAL MORTGAGE SERVICES, LLC**

Pursuant to Fed. R. Civ. P. 26 and 34, and L.R. 34.1, Plaintiff Bay Equity LLC hereby requests that Defendant Total Mortgage Services, LLC produce the following documents for inspection and copying to its counsel at the offices of Beck Reed Riden LLP, 155 Federal Street, Suite 1302, Boston, MA 02110, within thirty (30) days from the date of service of this request.

## DEFINITIONS

1.       The definitions set forth in L.R. 26.5 are deemed incorporated herein by reference. In this regard, please note that the terms "document" and "documents" specifically include all electronically stored information and any and all communications including, but not limited to, emails, instant messages, text messages, voicemail messages, and any other messages sent or received on any electronic platform (including, but not limited to, WhatsApp, Twitter, Facebook, LinkedIn, Facebook Messenger, WeChat, Slack, Skype, Confide, Signal, Dust, and iMessage).

2.       The terms "communicate" and "communicated" shall mean to transmit a communication by any means, whether it be orally, by writing, or otherwise.

3.      The terms "Plaintiff" and "Bay Equity" mean Plaintiff Bay Equity LLC, its officers, directors, employees, partners, corporate parent, subsidiaries, assigns, agents, attorneys, and any other persons acting on behalf of any of the aforementioned persons.

4.      The terms "you" and "Total Mortgage" mean Defendant Total Mortgage Services, LLC, its officers, directors, employees, partners, corporate parent, subsidiaries, assigns, agents, attorneys, and any other persons acting on behalf of any of the aforementioned persons.

5.      The term "your" refers, in the possessive form, to Total Mortgage.

6.      The term "Sirmaian" means Defendant Steven Sirmaian, and any person acting on his behalf.

7.      The term "Village" means Village Mortgage Company, its officers, directors, employees, partners, corporate parent, subsidiaries, assigns, agents, and attorneys, and any other persons acting on behalf of any of the aforementioned persons. For clarity, the term "Village" specifically excludes Bay Equity.

8.      The term "Former Employee" means any person who was employed by Bay Equity and/or Village and subsequently became employed by Total Mortgage, and any person acting on his or her behalf. The term "Former Employees" means every Former Employee, and any person acting on his or her behalf, collectively or in any combination. For the avoidance of doubt, the Former Employees include without limitation:

    a.   Alesia Warner
    b.   Alyssa Durkin
    c.   Andrea DiGeronimo
    d.   Andrea Stearns
    e.   Anna Lemieux
    f.   Anne Marie Concemi
    g.   Bridget Breed
    h.   Brieanna Kelley
    i.   Carl MacMath
    j.   Christopher Sweeney

k.  Colleen Nolin
l.  Denise Peach
m.  Deron Barton
n.  Ed Gosselin Jr.
o.  Emily Lasch
p.  Erin McNally
q.  Eva Sommer
r.  James (Jay) Johnston
s.  Jarret Eamiello
t.  Jennifer Jackson-Torrens
u.  Jesse Morgan
v.  Jill Cantarella
w.  Joni Bloom
x.  Jordan Johnson
y.  Katie Weldon
z.  Marc Nathan
aa.  Marco Merati
bb.  Mark Ranieri
cc.  Matt Tran
dd.  Melissa Clifton
ee.  Michael Solomon
ff.  Richard Breed
gg.  Robert Reeser
hh.  Samantha Sirmaian
ii.  Shelita Petersen
jj.  Sophia Bell
kk.  Stacy Burnham
ll.  Steve Kelley
mm.     Steven Sirmaian
nn.  Suzanne Greene
oo.  Thomas Valyo
pp.  Tracey Jackson
qq.  William Parenti
rr.  Yarelis Velez
ss.  Zachary Mourad

9.      The term "Employment Agreement" means any restrictive covenants agreement between Bay Equity or Village, on the one hand, and any Former Employee, on the other hand. The term "Employment Agreements" means every Employment Agreement, collectively and in any combination.

10.     The term "Confidential Information" means any nonpublic information that relates to Bay Equity and/or Village's business and was created, collected, and/or maintained (including by any of the Former Employees) for the purpose of conducting business at or on behalf of Bay Equity and/or Village. For avoidance of doubt, Confidential Information includes borrower information (including borrower identities, borrower lists, borrower contact information and personally identifiable information, information related to borrowers' needs and preferences, information related to borrowers' personal finances and credit reports, information related to borrowers' specific loan terms or offerings by Bay Equity and/or Village, and information contained in and relating to borrowers' loan files). Confidential Information encompasses the type of information described above regardless of where it was stored (*e.g.*, whether on Bay Equity's or Village's physical premises or systems, the Former Employees' Bay Equity or Village devices and/or email accounts, third-party hosting platforms (including Floify), or in the Former Employees' memories).

11.     The term "Borrower" means any past, present, or prospective client of Bay Equity and/or Village: (a) with whom any Former Employee had any communication on behalf of Village and/or Bay Equity, (b) about whom any Former Employee received or learned any Confidential Information, and/or (c) in connection with whom any Former Employee received commission or any other form of credit or compensation. The term "Borrowers" means every Borrower, collectively and in any combination. Bay Equity and Village's Borrowers include without limitation each person identified in Plaintiff's production, including in the document bates-labeled BAY00008062.

12.     The term "Referral Source" means any person who has referred any business or potential business to Village and/or Bay Equity: (a) with whom any Former Employee had any

communication on behalf of Village and/or Bay Equity, (b) about whose identity as a source of business or potential source of business any Former Employee learned through his or her Village and/or Bay Equity employment, or (c) who is the subject of or referenced in any Confidential Information. The term "Referral Sources" means each and every Referral Source, collectively and in any combination.

13.     The term "Action" means the above-captioned matter.

14.     The term "Amended Complaint" means the Amended Complaint filed by Bay Equity on March 30, 2020 (*see* Dkt. No. 3-1).

15.     As used herein, "dates" shall include the exact day, month, and year, if ascertainable, or, if not ascertainable, the best approximation thereof (including relationship to other events). Where approximate dates are used, so indicate.

16.      The connectives "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of any discovery request all responses that might otherwise be construed to be outside the scope of the request.

17.     The terms "all," "any," and "each" shall be construed as encompassing any and all.

18.     The use of the singular form of any word includes the plural and vice versa.

19.     The term "computer" means any electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

## <u>INSTRUCTIONS</u>

1.     These Requests for Production are directed to Total Mortgage and seek the production of all responsive documents, information, and things in its possession, custody, and

control including documents, information, and things in the possession, custody, and control of any person acting on the behalf of, at the direction of, or otherwise subject to the control of Total Mortgage.

2.    In the event that any documents sought by any request are known to be within the possession, custody, or control of any person who cannot now be located, identify that person and their last known whereabouts and/or contact information.

3.    If any of the documents cannot be produced in full, produce the documents to the extent possible and specify the reasons for Total Mortgage's inability to produce the remainder.

4.    If any document or tangible thing requested was, but is no longer, in Total Mortgage's possession, subject to Total Mortgage's control, or in existence, state whether each such document or tangible thing: (a) is missing or lost; (b) has been destroyed or otherwise disposed of; and (c) in any instance, explain the circumstances surrounding, and the authorization for, each such disposition, state the date or approximate date thereof, and describe the document, the type(s) of information contained therein, and the identity of all persons having knowledge of the contents thereof.

5.    If any document or portion of a document is withheld under a claim of privilege or work product, or for any other reason, furnish a list identifying each such document being withheld from production together with the following information so that the Court may rule on the proprietary of your objection:

      a.  the title of the document;

      b.  a brief description of the nature and subject of the document (*e.g.*, interoffice memorandum, correspondence, report);

      c.  the name and title of the author or sender of the document;

d.   the name and title of the addressee(s) and other recipients of the document, regardless of whether such recipients are identified in the document;

e.   the date of the document;

f.   the number of pages of the document;

g.   the name of each person to whom the original or a copy of the document was shown or circulated;

h.   the names appearing on any circulation list relating to the document;

i.   the particular document request to which the document responds;

j.   the portion(s) of the document being withheld;

k.   your reason for withholding the document or a portion of the document from production; and

l.   a summary of the subject matter of the document (or redacted material) in sufficient detail to permit the Court to rule on the proprietary of the objection.

6.   All electronically-stored information shall be produced by Total Mortgage in native and TIFF format with associated Optical Character Recognition (OCR) data on CD-ROM or DVD disks, or external hard drive (with standard PC compatible interface) or in other such form that is electronically searchable by, and agreeable to, counsel for Bay Equity. TIFF files and OCR data should be in multi-page format. In addition, Total Mortgage shall produce to counsel for Bay Equity in electronically readable form the following metadata associated with each electronic document:

| Field Name | Description |
|---|---|
| AttachID | The BeginBates number(s) of documents attached to a parent email (only included for parent emails) |
| Attachment Count | Number of attachments |
| Author | Name of the author from the Properties field of the original file |
| BeginBates | Bates number of the first page of a document |

| EndBates | Bates number for the last page of a document |
|---|---|
| Beg Attach | Beginning attachment bates number |
| End Attach | End attachment bates number |
| BCC | Members of the BCC list in an email |
| CC | Members of the CC list in an email |
| Confidentiality Designation | Confidentiality designation assigned to document (if any) |
| Create Date | Date a document was created |
| Create Time | Time a document was created |
| Custodian | Owner of the file or archive from which the file was obtained |
| All Custodian | Global/duplicate custodian of same file |
| Date Accessed | File accessed date (format: MM/DD/YYYY) |
| Time Accessed | File accessed time (format: HH:MM:SS AM/PM) |
| Doc Type | The file type is the name given to a specific type of file such as MS Word, Excel, PDF |
| Filename | The name of a file as it appears in electronic format |
| File Extension | The extension is an abbreviation after the file name used to identify the file format |
| File Path | The file path defines the location of a file or folder in a computer's file system |
| File Size | File size in KB |
| File Description | Native type of the document (*e.g.*, MS Word, Excel, PDF) |
| Folder | If the document is from scanned paper, an indication of the container from which the document was obtained |
| From | Name or email listed in From line of an email |
| MD5Hash | MD5Hash Value |
| Modified Date | The date when a new version or modification of an item is created |
| Modified Time | The time when a new version or modification of an item is created |
| Native Link | Relative path to native files |
| Page Count | Image count of the document |
| ParentID | The BeginBates number for the email to which a document is attached in a message unit (populated only for children emails) |
| Received Date | Date an email was received |

| Received Time | Time an email was received |
|---|---|
| Record Type | Email, email attachment, electronic document, electronic document attachment |
| Sent Date | Date an email was sent |
| Sent Time | Time an email was sent |
| Email Subject | The Subject of an email |
| Doc Title | Title of the document, as in the Properties field of the original file |
| To | Members of the To list in the email |

7.      The foregoing definitions and instructions are not intended to limit Total Mortgage's obligations under the Federal Rules of Civil Procedure or any other applicable rule, regulation, or law. As such, if any of the foregoing definitions or instructions is deemed to require the provision of less information than otherwise would be required by the Federal Rules of Civil Procedure or any other applicable rule, regulation, or law, than such other rule, regulation, or law is to govern in relevant part.

8.      The requests shall be deemed continuing in nature so as to require additional responses if further responsive documents or tangible things are received or discovered between the time when the responses are served and the time of trial. Such additional responses shall be served from time to time, but not later than thirty (30) days after such additional documents or tangible things are received or discovered.

9.      Unless otherwise specified within a particular request, these requests shall be construed to cover the period spanning from January 1, 2018 through the present.

## **DOCUMENTS TO BE PRODUCED**

**REQUEST NO. 1:**   All documents and things identified, consulted, or relied on by you in answering or otherwise responding to any interrogatory propounded by Bay Equity to you.

**REQUEST NO. 2:**   All documents and things concerning any of the facts or circumstances raised by any of the pleadings, motion papers, or affidavits filed in this Action.

**REQUEST NO. 3:**   All documents and things concerning any communication – whether as between or among Defendants, internal to Total Mortgage, with any of the Former Employees, or with any third party – concerning any of the facts or circumstances raised by any of the pleadings, motion papers, or affidavits filed in this Action.

**REQUEST NO. 4:**   The native file versions of each document produced by any Defendant on February 22, 2021 in this Action, together with metadata, in a format consistent with the above Instructions.

**REQUEST NO. 5:**   All documents and things concerning any of the Employment Agreements or any of the restrictive covenants contained therein. This request seeks without limitation all documents and things concerning the drafting, negotiation, execution, and/or delivery of any of the Employment Agreements or any of the restrictive covenants contained therein.

**REQUEST NO. 6:**   All documents and things concerning any Defendant's notice of, knowledge of, awareness of, request for, receipt of, analysis concerning, opinion concerning, instruction concerning, advice concerning, or policy or practice concerning any of the Employment Agreements or any of the restrictive covenants contained therein.

**REQUEST NO. 7:**   All documents and things concerning any Defendant's recruitment, solicitation, hire, consideration for hire, or onboarding of any of the Former Employees.

**REQUEST NO. 8:**   All documents and things concerning any Defendant's recruitment, solicitation, hire, consideration for hire, or onboarding of any other person who was – at the time – a Bay Equity or Village employee.

**REQUEST NO. 9:**   All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants to: (1) recruit, solicit, or hire any person who was – at the time – a Bay Equity or Village employee (including the Former Employees), and/or (2) recruit, solicit, or hire any group of Bay Equity's or Village's employees.

**REQUEST NO. 10:**  All documents and things concerning any communication between or among any of the Defendants, on the one hand, and any of the Former Employees, on the other hand, concerning recruiting, soliciting, hiring, considering for hire, or onboarding any person who was – at the time of the communication – a Bay Equity or Village employee.

**REQUEST NO. 11:**  All documents and things concerning any communication between or among any of the Defendants (including the Former Employees, to the extent that they were then employed by Total Mortgage), on the one hand, and any person who was – at the time of the communication – a Bay Equity or Village employee, on the other hand.

**REQUEST NO. 12:**  All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants to: (1) use, cause, encourage, instruct, enable, help, or permit any of the Former Employees (or any other person who had been employed by Village or Bay Equity) to recruit, solicit, induce, cause, or encourage any person who was – at the time of the communication – a Bay Equity or Village employee to leave Bay Equity or Village and/or join Total Mortgage; or (2) otherwise leverage the personal relationship(s) between any of the Former Employees, on the one hand, and any person who was – at the time – a Bay Equity or Village

11

employee, on the other hand, to move or attempt to move the Bay Equity or Village employee to Total Mortgage.

**REQUEST NO. 13:**  All documents and things concerning the lift-out of Village employees in December 2018, as referenced in Paragraphs 44 and 45 of the Amended Complaint. For clarity, this request seeks without limitation all documents and things concerning the resignations of Village employees in December 2018 and their movement to Total Mortgage, and the planning and/or coordination thereof.

**REQUEST NO. 14:**  All documents and things concerning the lift-out of Village employees in April 2019, as referenced in Paragraph 46 of the Amended Complaint. For clarity, this request seeks without limitation all documents and things concerning the resignations of Village employees in April 2019 and their movement to Total Mortgage, and the planning and/or coordination thereof.

**REQUEST NO. 15:**  All documents and things concerning the lift-outs of Bay Equity employees in early 2020, as referenced in Paragraphs 51 and 52 of the Amended Complaint. For clarity, this request seeks without limitation all documents and things concerning the resignations of Bay Equity employees in early 2020 and their movement to Total Mortgage, and the planning and/or coordination thereof.

**REQUEST NO. 16:**  To the extent not covered by any foregoing request, all documents and things concerning the resignation of any of the Former Employees from Bay Equity and/or Village, including without limitation: (1) the Former Employees' reasons for resigning; (2) the timing of their resignations, and the planning and/or coordination thereof; and/or (3) the content of the employees' resignation communications to Bay Equity or Village, and the planning and/or coordination thereof.

**REQUEST NO. 17:**  All nonprivileged communications with or concerning Paul F. Driscoll, including without limitation all emails exchanged with the email address pdriscoll@nhdlaw.com.

**REQUEST NO. 18:**  All documents and things concerning any in-person meeting (including training) between or among any Defendant (including any Former Employee acting on behalf of Total Mortgage) and any person who, at the time of the meeting, was employed by Bay Equity or Village.

**REQUEST NO. 19:**  All documents and things concerning any work that any of the Former Employees performed for or on behalf of Total Mortgage while they were still employed by Bay Equity or Village.

**REQUEST NO. 20:**  All documents and things concerning or containing any Confidential Information. This request seeks without limitation all documents and things that are derivative of or reflecting Defendants' use of any Confidential Information.

**REQUEST NO. 21:**  All documents and things concerning any unauthorized acquisition, retention, disclosure, dissemination, or use of any Confidential Information by any of the Defendants or Former Employees. This request seeks without limitation all documents and things concerning any Defendant's knowledge, awareness, or notice: (1) that the information constitutes Bay Equity and/or Village's Confidential Information, and/or (2) that such acquisition, retention, disclosure, dissemination, or use was unauthorized by Bay Equity and/or Village.

**REQUEST NO. 22:**  All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to acquire, retain, disclose, disseminate, or use any Confidential Information at or on behalf of Total Mortgage.

**REQUEST NO. 23:** Documents sufficient to identify each of Total Mortgage's policies and practices concerning its confidential information (and the measures it takes to protect such information).

**REQUEST NO. 24:** Documents sufficient to identify each of Total Mortgage's policies and practices concerning the confidentiality and treatment of its own borrower information (including borrower identities, borrower lists, borrower contact information and personally identifiable information, information related to borrowers' needs and preferences, information related to borrowers' personal finances and credit reports, information related to borrowers' specific loan terms or offerings by Total Mortgage, and information contained in and relating to borrowers' loan files).

**REQUEST NO. 25:** Documents sufficient to identify each of Total Mortgage's policies and practices concerning confidential information belonging to its competitors, including confidential information belonging to Bay Equity and Village.

**REQUEST NO. 26:** All documents and things concerning any agreement between any of the Defendants, on the one hand, and any of the Former Employees, on the other hand, including without limitation any restrictive covenants or indemnification agreement. This request seeks without limitation all documents and things concerning the drafting, negotiation, execution, and/or delivery of any such agreement.

**REQUEST NO. 27:** All documents and things concerning any effort or undertaking by any of the Defendants to prevent, stop, or limit the unauthorized acquisition, retention, disclosure, dissemination, and/or use of Confidential Information (including by the Former Employees) at or on behalf of Total Mortgage.

14

**REQUEST NO. 28:**  All documents and things concerning any effort or undertaking by any of the Defendants to isolate, and return to Bay Equity and/or Village, Confidential Information.

**REQUEST NO. 29:**  All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants to use, cause, encourage, instruct, enable, help, or permit any of the Former Employees to acquire, retain, disclose, disseminate, or use Confidential Information at or on behalf of Total Mortgage.

**REQUEST NO. 30:**  All documents and things concerning any social media account/page (including Facebook and LinkedIn) that was converted from a Bay Equity and/or Village account/page to an account and/or page that was used to perform work at or on behalf of Total Mortgage.

**REQUEST NO. 31:**  All documents and things concerning any cloud-based data storage account (such as One Drive or Google Drive) on which any Confidential Information has been stored or through which any Confidential Information has been moved.

**REQUEST NO. 32:**  All documents and things concerning any social media post concerning any of the facts or circumstances raised in this Action.

**REQUEST NO. 33:**  All documents and things concerning any Borrower.

**REQUEST NO. 34:**  All documents and things concerning any product or service that any of the Defendants and/or Former Employees has provided to any Borrower at or on behalf of Total Mortgage.

**REQUEST NO. 35:**   All documents and things concerning any work that any of the Defendants and/or Former Employees has performed for any Borrower at or on behalf of Total Mortgage.

**REQUEST NO. 36:**  All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to move any Borrower to Total Mortgage or to do business with any Borrower at or on behalf of Total Mortgage.

**REQUEST NO. 37:**  All documents and things concerning any communication between or among any of the Defendants and/or Former Employees, on the one hand, and any Borrower, on the other hand.

**REQUEST NO. 38:**  All documents and things concerning any credit or financial incentives offered to any Borrower by the Defendants (including Former Employees working at or on behalf of Total Mortgage) for the purpose of moving that Borrower's business to Total Mortgage.

**REQUEST NO. 39:**  All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants to use, cause, encourage, instruct, enable, help, or permit any of the Former Employees to move any Borrower to Total Mortgage or to do business with any Borrower on behalf of Total Mortgage.

**REQUEST NO. 40:**  All documents and things concerning any agreement between any of the Defendants and/or Former Employees, on the one hand, and any Borrower, on the other hand. This request seeks without limitation all documents and things concerning the drafting, negotiation, execution, and/or delivery of any such agreement.

**REQUEST NO. 41:**  All documents and things concerning any invoice or other statement issued by Total Mortgage to or in connection with any Borrower, for any product or service provided to any Borrower, or for any work performed for any Borrower.

**REQUEST NO. 42:**  All documents and things concerning any payment made to Total Mortgage by or in connection with any Borrower, for any product or service provided to any Borrower, or for any work performed for any Borrower.

**REQUEST NO. 43:**  Documents sufficient to identify each and every loan any of the Former Employees closed or help to close during their first year of employment with Total Mortgage.

**REQUEST NO. 44:**  Documents sufficient to identify each and every loan application that was started by or with the help of any of the Former Employees during their first year of employment with Total Mortgage.

**REQUEST NO. 45:**  Documents sufficient to identify all revenues generated by the Former Employees in their first year of employment with Total Mortgage, broken down by month and by borrower.

**REQUEST NO. 46:**  All documents and things concerning any Referral Source.

**REQUEST NO. 47:**  All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to move any Referral Source to Total Mortgage or to do business with any Referral Source on behalf of Total Mortgage.

**REQUEST NO. 48:**  All documents and things concerning any communication between or among any of the Defendants and/or Former Employees (while employed at or operating on behalf of Total Mortgage), on the one hand, and any Referral Source, on the other hand.

**REQUEST NO. 49:**  All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants to use, cause, encourage, instruct, enable, help, or permit any of the Former Employees to move any Referral Source to Total Mortgage or to do business with any Referral Source on behalf of Total Mortgage.

**REQUEST NO. 50:**  All documents and things concerning any client, potential client, business, or potential business that any Referral Source has directed toward Total Mortgage, or that Total Mortgage has received through any Referral Source.

**REQUEST NO. 51:**  All documents and things concerning any agreement between any of the Defendants and/or Former Employees, on the one hand, and any Referral Source, on the other hand. This request seeks without limitation all documents and things concerning the drafting, negotiation, execution, and/or delivery of any such agreement.

**REQUEST NO. 52:**  All documents and things concerning any invoice that Total Mortgage has issued in connection with business referred by any Referral Source.

**REQUEST NO. 53:**  All documents and things concerning any payment that Total Mortgage has received in connection with business referred from any Referral Source.

**REQUEST NO. 54:**  All documents and things concerning any representation that any Defendant (including any Former Employee who was – at the time of the communication – employed by or operating on behalf of Total Mortgage) has made to any third party (including any Borrower, Referral Source, or any person who was – at the time of the communication – a Bay Equity or Village employee) concerning Bay Equity and/or Village's organizational or financial health, their ability to serve clients, or their future. This request seeks without limitation all documents and things concerning any statement (in words or effect) that Bay Equity and/or Village is a sinking ship, is going under, that everyone is leaving and coming to Total Mortgage, or that Bay Equity and/or Village is now Total Mortgage.

**REQUEST NO. 55:**  All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to disparage Bay Equity or Village in the marketplace, including among Borrowers and Referral Sources.

**REQUEST NO. 56:**  To the extent not covered by any foregoing request, all documents and things concerning any strategy, plan, effort, scheme, or design to injure or take over Bay Equity's or Village's business, breach the Former Employees' Employment Agreements, misappropriate

Bay Equity's or Village's trade secrets and other confidential information, and/or divert business and referral sources from Bay Equity and/or Village to Total Mortgage.

**REQUEST NO. 57:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 47 of the Amended Complaint that "Sirmaian and Peach were instrumental in coordinating each of the lift-outs alongside (and behalf of) Total Mortgage. Among other things, Sirmaian and Peach pressured employees (including their own reports) to leave for Total Mortgage, variously telling the employees that 'everyone is leaving' Village (or words to that effect) and that they (Sirmaian and Peach) wanted the employees to be 'on their team at Total' (or words to that effect)."

**REQUEST NO. 58:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraphs 49 and 59 of the Amended Complaint concerning Sirmaian's and Peach's motivations for acting against Village and Bay Equity, including without limitation their personal animosity for Laurel Caliendo.

**REQUEST NO. 59:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 52 of the Amended Complaint that "Bay Equity believes that the Former Employees solicited and coordinated their resignations with each other, in violation of the no-raid provisions contained in their Employment Agreements, at Defendants' instruction and encouragement."

**REQUEST NO. 60:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 53 of the Amended Complaint that "Defendants were the driving force behind the latest serial resignations – and used the same high-pressure, intimidation tactics to move Bay Equity's workforce to Total Mortgage."

**REQUEST NO. 61:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 56 of the Amended Complaint that "Defendants . . . have used the Former Employees to solicit remaining Bay Equity employees, in violation of the Former Employees' no-raid obligations contained in their Employment Agreements."

**REQUEST NO. 62:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 57 of the Amended Complaint that "Defendants knew about the Former Employees' Employment Agreements . . . at the time that Defendants instructed and/or encouraged the Former Employees to solicit each other and other Bay Equity employees in violation of the Former Employees' no-raid obligations."

**REQUEST NO. 63:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 63 of the Amended Complaint that the "Former Employees took Bay Equity's Confidential Information to use on behalf of Total Mortgage, and have since done so with Total Mortgage's knowledge of the information's wrongful acquisition and use . . . . Total Mortgage has begun mimicking Bay Equity's Playbook . . . in an apparent attempt to make it appear that Bay Equity is, essentially, now Total Mortgage."

**REQUEST NO. 64:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 64 of the Amended Complaint that "The Former Employees have variously begun moving Bay Equity's borrowers to Total Mortgage, using Bay Equity's Confidential Information."

**REQUEST NO. 65:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 66 of the Amended Complaint that "the

Former Employees moved highly sensitive, Confidential Information concerning the borrowers' credit from Bay Equity to Total Mortgage."

**REQUEST NO. 66:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 67 of the Amended Complaint that "Total Mortgage is still in possession of Bay Equity's Confidential Information that was brought over by the Former Employees."

**REQUEST NO. 67:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 69 of the Amended Complaint that "Total Mortgage knew about the Former Employees' Employment Agreements at the time of the misappropriation. By encouraging and otherwise enabling the Former Employees to use Bay Equity's Confidential Information on behalf of Total Mortgage, Total Mortgage unlawfully interfered with the Employment Agreements, including the nonsolicitation and nondisclosure provisions contained therein."

**REQUEST NO. 68:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraph 70 of the Amended Complaint that "Defendants have also sought to degrade Bay Equity's reputation and referral relationships by spreading misinformation concerning Bay Equity's financial and organizational health."

**REQUEST NO. 69:**  To the extent not covered by any foregoing request, all documents and things concerning the allegations contained in Paragraphs 71 and 72 of the Amended Complaint that "Defendants have variously told Bay Equity's referral sources that Bay Equity is closing," "the company's loan officers are all leaving and that Bay Equity is going out of business."

**REQUEST NO. 70:**  All documents and things concerning the voicemail that Total Mortgage's CEO, Scott Penner, left for Bay Equity's CEO, Brett McGovern, on February 27, 2020, the phone

call that took place between Scott Penner and Autumn Van Rooy on February 28, 2020, or any of the facts or circumstances raised by or in either of those communications.

**REQUEST NO. 71:**  All documents and things concerning any strategy, plan, or effort by any of the Defendants to take over Bay Equity's leases in Connecticut.

**REQUEST NO. 72:**  All documents and things concerning any sign-on bonus or other compensation or benefit offered to any Bay Equity or Village employee (including the Former Employees) as incentive to join Total Mortgage.

**REQUEST NO. 73:**  Documents sufficient to show that the Total Mortgage has offered more incentive (in the form of sign-on bonuses or any other compensation or benefit) to Bay Equity or Village employees to join Total Mortgage than it has offered to other candidates for hire, for the same or similar positions.

**REQUEST NO. 74:**  Documents sufficient to identify each of the Former Employees' compensation by Total Mortgage, including the calculation, methods of calculating, and decisions concerning the methods of calculating each of the Former Employees' compensation by Total Mortgage.

**REQUEST NO. 75:**  All documents and things concerning Scott Penner's sworn statement that "Total Mortgage is not the least bit interested in Bay Equity's business viability, either nationally or in the northeast."

**REQUEST NO. 76:**  All documents and things concerning Scott Penner's sworn statement that "in the mortgage industry, referral-based loan officers always retain their customer lists upon changing employers. It is an accepted and virtually universal practice in the industry. Loan officers are hired and compensated based on having an established list of clients and referral sources that they have cultivated over time and that will continue to work with them."

**REQUEST NO. 77:**  All documents and things concerning Scott Penner's sworn statement that Total Mortgage "did not have any knowledge of existing employment restrictive covenants or the terms therein, and as such, . . . absolutely did not encourage or request any former Bay Equity employee to breach their agreements."

**REQUEST NO. 78:**  All documents and things concerning Scott Penner's sworn statement that "Total Mortgage did not, nor has it ever, requested or encouraged any Bay Equity employee to provide Total Mortgage with Bay Equity's confidential or proprietary information that the employee may have received or removed from Bay Equity. Total Mortgage has no knowledge of the referenced 'Playbook' of Bay Equity; prior to this action, I nor anyone I have spoken to at Total Mortgage had ever heard of such a document. I have never seen it, used it, or even discussed it. I am not aware of any confidential or proprietary information that any employees of Total Mortgage have from Bay Equity."

**REQUEST NO. 79:**  All documents and things concerning Scott Penner's sworn statement that "To the extent any [confidential or proprietary information that any employees of Total Mortgage have from Bay Equity] is discovered, such material would be returned to Bay Equity and destroyed by Total Mortgage."

**REQUEST NO. 80:**  All documents and things concerning Scott Penner's sworn statement that "It is [Total Mortgage's] policy to tell every new hire from any company to not take any proprietary and confidential information from their previous employer, including but not limited to any loans in process with their previous company. I can state with certainty that this was communicated to the former Bay Equity employees."

**REQUEST NO. 81:**  All documents and things concerning Scott Penner's sworn statement that "Total Mortgage has no other proprietary or confidential documents of Bay Equity. It does not

want nor need them. Total Mortgage . . . does not want or need any 'Playbook' or other confidential information from Bay Equity . . . ."

**REQUEST NO. 82:**  All documents and things concerning Scott Penner's sworn statement that "under no circumstances did [Bay Equity's Former Employees] desire to continue their employment under [Laurel Caliendo]."

**REQUEST NO. 83:**  All documents and things concerning Scott Penner's sworn statement that, after Bay Equity effected its limited asset purchase of Village, the Former Employees "were going to be leaving [Bay Equity] no matter what."

**REQUEST NO. 84:**  All documents and things concerning Scott Penner's sworn statement that the Former Employees "have built up their client and referral lists through many years in the business, all of them long before they worked for Bay Equity . . . ."

**REQUEST NO. 85:**  All documents and things concerning Scott Penner's sworn statement that "Denise Peach has had no responsibilities to recruit Bay Equity's employees for Total Mortgage and was not involved in the hiring of any former employees of Bay Equity. Accordingly, she has not received any compensation related to Total Mortgage's hiring of former Bay Equity employees."

**REQUEST NO. 86:**  All documents and things concerning Denise Peach's sworn statement that Bay Equity's allegations concerning her involvement in the Bay Equity lift-outs "are not true."

**REQUEST NO. 87:**  All documents and things concerning Denise Peach's sworn statement that she "had no involvement whatsoever in the recruitment of any Bay Equity employees to Total Mortgage" and that she "did not learn that those employees were even coming to Total Mortgage until after they had already tendered their resignations with Bay Equity."

**REQUEST NO. 88:**  All documents and things concerning Denise Peach's sworn statement that she "did not speak to any of the Bay Equity employees about joining Total Mortgage prior to their leaving Bay Equity" and "ha[s] not been involved in any way with their onboarding or supervision since they have joined Total Mortgage."

**REQUEST NO. 89:**  All documents and things concerning Denise Peach's sworn statement that she "had absolutely nothing to do with [Bay Equity's former employees] joining [Total Mortgage] or any of their work at Total Mortgage since they have joined."

**REQUEST NO. 90:**  All documents and things concerning Denise Peach's sworn statement that she "ha[s] no idea whether [Bay Equity's former employees] have any contracts or agreements with Bay Equity" and "[t]he first [she had] ever heard of such contracts was when [she] received the Complaint . . . ."

**REQUEST NO. 91:**  All documents and things concerning Denise Peach's sworn statement that Peach "ha[s] not seen any of [Bay Equity's former employees'] employment agreements, and do[es] not know who, if anyone, is subject to any employment agreements with Bay Equity."

**REQUEST NO. 92:**  All documents and things concerning Denise Peach's sworn statement that she "ha[s] certainly not encouraged anyone to breach any contract or agreement that they might have with Bay Equity."

**REQUEST NO. 93:**  All documents and things concerning Denise Peach's sworn statement that she "ha[s] not and will not receive any additional compensation, bonus, or other personal benefit as a result of any former Bay Equity employees joining Total Mortgage."

**REQUEST NO. 94:**  All documents and things concerning Denise Peach's sworn statement that she "was not at all involved in [Bay Equity's former employees'] hiring."

**REQUEST NO. 95:**  All documents and things concerning any investigation concerning, or effort to investigate, any of the facts or circumstances raised by any of the pleadings, motion papers, or affidavits filed in this Action or otherwise in response to any similar allegation(s) made by Plaintiff against any of the Defendants or Former Employees.

**REQUEST NO. 96:**  All documents and things concerning any of Defendants' defenses asserted in this Action.

**REQUEST NO. 97:**  To the extent not covered by any foregoing request, and only to the extent that such persons have not been identified in the definition of "Former Employees," documents sufficient to identify every person who was employed by Bay Equity or Village and who subsequently became employed by Total Mortgage.

**REQUEST NO. 98:**  To the extent not covered by any foregoing request, all documents and things concerning the limited asset purchase by Bay Equity of Village, and any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to exploit, capitalize on, or benefit from the purchase.

**REQUEST NO. 99:**  To the extent not covered by any foregoing request, all documents and things concerning any communication between or among any of the Defendants and/or Former Employees, on the one hand, and any third party, on the other hand, referencing Bay Equity or Village, including without limitation emails bearing the subject line "Please excuse my previous employer" (in words or effect) or similar emails.

**REQUEST NO. 100:** To the extent not covered by any foregoing request, all documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to close or neglect any borrower file on any Bay Equity or Village system, for the purpose of moving the borrower to Total Mortgage.

**REQUEST NO. 101:** To the extent not covered by any foregoing request, all documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to conceal from or avoid detection by Bay Equity or Village, concerning any conduct alleged against any of the Defendants and/or Former Employees in the Amended Complaint.

**REQUEST NO. 102:** Produce all computers and removable electronic storage devices containing Confidential Information for non-destructive inspection, which will be subject to a mutually-agreeable protocol.[1]

**REQUEST NO. 103:** To the extent not covered by any foregoing request, all telephone records that may, in any way, concern any of the facts or circumstances raised by any of the pleadings, motion papers, or affidavits filed in this Action, including without limitation all invoices, call logs, and voicemail messages.

**REQUEST NO. 104:** To the extent not covered by any foregoing request, all diaries, calendars, desk pads, appointment books, or notes that may, in any way, concern any of the facts or circumstances raised by any of the pleadings, motion papers, or affidavits filed in this Action.

**REQUEST NO. 105:** All documents and things concerning Total Mortgage's accounting books and records, including financial statements, trial balances, and all software data files such as QuickBooks files, Microsoft Money files, Excel, and similar data files, insofar as any such document or thing concerns any of the facts or circumstances raised in this Action. For clarity, this request seeks without limitation all documents and things concerning Total Mortgage's accounting books and records, including financial statements, trial balances, and all software data files such

---

[1] Bay Equity will retain a forensics computer expert who will, among other things, be requested to copy the hard drives of the computers and other devices for inspection. Compliance with this request can be accomplished by providing Bay Equity's computer expert access to this property for copying.

as QuickBooks files, Microsoft Money files, Excel, and similar data files that reflect Total Mortgage's business relationship with any Borrower or Referral Source (and balances accrued, invoiced, and collected as a result of any such relationship).

**REQUEST NO. 106:** All documents and things concerning the retention of any professional (including without limitation lawyers, accountants, and investigators) in connection with this Action or any of the facts or circumstances raised in this Action.

**REQUEST NO. 107:** All documents and things concerning non-privileged communications with any professional (including without limitation lawyers, accountants, and investigators) in connection with this Action or any of the facts or circumstances raised in this Action.

**REQUEST NO. 108:** All documents and things concerning any policy concerning the preservation or destruction of documents, generally.

**REQUEST NO. 109:** All documents and things concerning the preservation or destruction of any documents relevant to this Action.

**REQUEST NO. 110:** True and complete copies of any reports of experts that may, in any way, concern any of the facts or circumstances raised in this Action.

**REQUEST NO. 111:** True and complete copies of any reports of any nature whatsoever that may, in any way, concern any of the facts or circumstances raised in this Action.

**REQUEST NO. 112:** True and complete copies of any witness statements, whether the same be signed or unsigned, written or oral, or transcribed, concerning any of the facts or circumstances raised in this Action.

**REQUEST NO. 113:** All documents that you intend to offer as evidence at time of any hearing, settlement conference, mediation, or final adjudication of this Action.

**REQUEST NO. 114:** All drafts of any documents produced in response to any of the foregoing requests.

                                        Respectfully submitted,

                                        BAY EQUITY LLC,

                                        By its attorneys,

                                        */s/ Hannah T. Joseph*
                                        Russell Beck, BBO No. 561031
                                        Stephen D. Riden, BBO No. 644451
                                        Hannah T. Joseph, BBO No. 688132
                                        Kyle Vieira, BBO No. 705967
                                        BECK REED RIDEN LLP
                                        155 Federal Street, Suite 1302
                                        Boston, Massachusetts 02110
                                        Phone: (617) 500-8660
                                        Fax: (617) 500-8665
                                        *rbeck@beckreed.com*
                                        *sriden@beckreed.com*
                                        *hjoseph@beckreed.com*
Dated: February 24, 2021                 *kvieira@beckreed.com*

## CERTIFICATE OF SERVICE

        I hereby certify that a true copy of the above document was served upon attorneys of record by email on February 24, 2021.

                                        */s/ Hannah T. Joseph*