UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BAY EQUITY LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-10693-IT |
| | * | |
| TOTAL MORTGAGE SERVICES, LLC | * | |
| and STEVEN SIRMAIAN, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 9, 2021

TALWANI, D.J.

Pending before the court is Plaintiff Bay Equity LLC's ("Bay Equity") Second Motion to Compel Discovery [#57]. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

## I.     Factual Allegations

Bay Equity's factual allegations were laid out in detail in the court's Memorandum & Order [#35] granting Denise Peach's Motion to Dismiss for Fraudulent Joinder [#13]. They are repeated here in abbreviated form.

Plaintiff Bay Equity and Defendant Total Mortgage Services, LLC ("Total Mortgage") are direct competitors in the retail mortgage lending industry. Am. Compl. ¶ 10 [#3-1]. Village Mortgage Company ("Village") was a regional mortgage lender operating in the Northeast. Id. at ¶ 3. Defendant Steven Sirmaian was a Village employee. Id. at ¶ 11.

In December 2018, Sirmaian and a dozen other employees left Village to join Total Mortgage. Id. at ¶¶ 45-46. In April 2019, several additional employees left Village to join Total

Mortgage. Id. at ¶ 46. Bay Equity characterizes both sets of departures as "coordinated lift-outs" by Total Mortgage and Sirmaian. Id. at ¶¶ 44, 46.

In July 2019, Bay Equity effected a limited asset purchase of Village and hired many of its remaining employees. Id. at ¶ 3. As a condition of employment, Bay Equity required many of the former Village employees to sign restrictive covenants that included a "no-raid" provision, a non-solicitation clause, and a non-disclosure clause covering Bay Equity's confidential information. Id. at ¶¶ 37–40. Bay Equity asserts that after the purchase, sixteen Bay Equity employees left to join Total Mortgage, including nine on February 21, 2020. Id. at ¶¶ 51-52. Bay Equity also alleges that Total Mortgage and Sirmaian coordinated these resignations. Id. at ¶¶ 52-53.

In addition, Bay Equity alleges that former Bay Equity employees brought Bay Equity's confidential information with them to Total Mortgage. Id. at ¶¶ 5, 18, 60–62. Several former Bay Equity employees then allegedly used this confidential information to move Bay Equity's borrowers over to Total Mortgage—including, in some cases, without the borrower's knowledge or consent—and to process loans for the borrowers. Id. at ¶¶ 64–66.

Defendants counter that "Total Mortgage legitimately and legally hired employees from one of its competitors, because they no longer wanted to work at Bay Equity" and that "Sirmaian had virtually nothing to do with the recruitment or hiring of the employees that moved from Bay Equity to Total Mortgage." Defs' Opp. 1-2 [#59]. They also deny knowing about the restrictive covenants in the former Bay Equity employees' contracts and deny taking any of Bay Equity's confidential information. Id. at 14.

## II.    Standard of Review

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(B) allows a party resisting production of electronically stored information ("ESI") to avoid production if such ESI is not reasonably accessible because of undue burden or cost. Fed. R. Civ. P. 26(b)(2)(B).

Federal Rule of Civil Procedure 34 governs requests for production of documents, ESI, and tangible things. Fed. R. Civ. P. 34. Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Fed. R. Civ. P. 37(a). Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv).

However, the court has "broad discretion to manage discovery matters," Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003), and may decline to compel. In addition, the court must "limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues." In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., No. 13-cv-02419, 2014 WL 12814933, at *2 (D. Mass. Feb. 7, 2014); see also Fed. R. Civ. P. 26(b)(2)(C).

### III.   Discussion

In its Second Motion to Compel Discovery [#57], Bay Equity claims that Total Mortgage and Sirmaian "have asserted baseless objections in their written responses [to Bay Equity's requests for the production of documents] that interfere with Bay Equity's ability to obtain the documents necessary to pursue its claims." Second Mot. to Compel [#57]. Bay Equity seeks a court order overruling Defendants' objections and requiring them to produce documents responsive to its requests. Pl's Mem. 2 [#58].

### A.   Inclusion of Village in Bay Equity Definitions

Bay Equity first seeks an order overruling Defendants' General Objection No. 4 to Bay Equity's requests for production. Id. at 7-8. General Objection No. 4 states that Defendants

> specifically object[] to the definitions [contained in Bay Equity's requests for production of documents] to the extent that they seek to include Village Mortgage Company ("Village"), which is not a party to this action, with the Plaintiff Bay Equity LLC ("Bay Equity"). Because Village is not a party to this action, the hiring of any Village employees has no relevance to this action.

Total Mortgage Resp. 2 [#58-3]; Sirmaian Resp. 2 [#58-4].

Bay Equity takes issue with this objection and explains that, as a "compromise," it limited its definition of "former employees"—which originally included those who went directly from Village to Total Mortgage—and "employment agreements" to only those individuals who were at some point employed by Bay Equity and their employment agreements with Bay Equity. Pl's Mem. 8 [#58]. Based on this change, Bay Equity requested that Defendants withdraw their

4

general objection, but they refused to do so. <u>Id.</u> at 8. Bay Equity therefore asks the court to overrule the objection. <u>Id.</u>

Bay Equity has not, however, moved to compel responses to any specific requests for production if the objection is overruled (except as discussed below). Rule 37 provides a mechanism for compelling responses, not addressing objections in the abstract. Bay Equity's motion that the court overrule Defendants' General Objection No. 4 is accordingly denied, and the court turns to the individual requests for production at issue.

B.  *Documents Responsive to Requests Related to Village's "Confidential Information" and "Borrowers"*

Bay Equity moves to compel documents responsive to Requests for Production Nos. 20-22, 27-29, 31, 56, 63-67, and 102 to Total Mortgage and Nos. 20-22, 27-29, 31, 51, 58-62, and 96 to Sirmaian. Proposed Order [#57-1]. Defendants object to these requests insofar as they contain the term "Confidential Information," which Bay Equity has defined as follows:

> The term "Confidential Information" means any nonpublic information that relates to Bay Equity and/or Village's business and was created, collected, and/or maintained (including by any of the Former Employees) for the purpose of conducting business at or on behalf of Bay Equity and/or Village. For avoidance of doubt, Confidential Information includes borrower information (including borrower identities, borrower lists, borrower contact information and personally identifiable information, information related to borrowers' needs and preferences, information related to borrowers' personal finances and credit reports, information related to borrowers' specific loan terms or offerings by Bay Equity and/or Village, and information contained in and relating to borrowers' loan files). Confidential Information encompasses the type of information described above regardless of where it was stored (e.g., whether on Bay Equity's or Village's physical premises or systems, the Former Employees' Bay Equity or Village devices and/or email accounts, third-party hosting platforms (including Floify), or in the Former Employees' memories).

Total Mortgage Req. for Prod. 4 [#58-1]; Sirmaian Req. for Prod. 3-4 [#58-2]. Specifically, Defendants argue that Bay Equity's definition of "Confidential Information" includes

information relevant only to Village, not Bay Equity, and that the requests for production are therefore overbroad. Defs' Opp. 4-5 [#59].

By way of example, Request for Production No. 22 to Total Mortgage seeks:

**REQUEST NO. 22:** All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to acquire, retain, disclose, disseminate, or use any Confidential Information at or on behalf of Total Mortgage.

Total Mortgage Req. for Prod. 13 [#58-1]. Where "Confidential Information" includes "information that relates to . . . Village's business and was created, collected, and/or maintained (including by any of the Former Employees) for the purpose of conducting business at or on behalf of . . . Village," the court agrees with Defendants that such a request is overbroad.

However, confidential information that Bay Equity purchased from Village is properly included in Bay Equity's definition. Defendants argue that the Amended Complaint [#3-1] contains no allegation that Bay Equity purchased any confidential information from Village; that Bay Equity's initial disclosures asserted protection only of "Bay Equity's referral network," "Bay Equity's borrowers," and "Bay Equity's Internal Marketing Plans and Strategies"; and that not having asserted any claim on Village's confidential information in its initial disclosures, Bay Equity cannot now rely on counsel's assertions that such information was transferred to broaden the scope of discovery to information taken directly from Village. Defs' Opp. 6[#59]. Bay Equity replies that it disclosed the categories of its trade secrets but was under no obligation to disclose the *sources* of those trade secrets. Reply 2 [#62]. It also contends that "a ruling that none of the information or borrowers that Bay Equity purchased from Village can be considered Bay Equity's information in this action would fundamentally alter the scope of [its] claims" and that, in the interest of fairness, such a contention should be made in a separate motion to allow Bay Equity the opportunity to respond more thoroughly. Id. at 4.

6

The court agrees that Bay Equity was not required in its Amended Complaint [#3-1] to specifically allege that it purchased confidential information from Village. The Amended Complaint [#3-1] alleges that former Bay Equity employees brought Bay Equity's confidential information with them to Total Mortgage and that Total Mortgage then misused that information. Am. Compl. ¶¶ 62-69 [#3-1]. To the extent that Bay Equity purchased confidential information from Village, that information became Bay Equity's confidential information and is covered by the allegation. It is therefore also covered by any request for production of documents related to *Bay Equity's* confidential information.

Bay Equity also moves to compel documents responsive to Requests for Production Nos. 33-42, 55, 65-65, 100, and 105 to Total Mortgage and Nos. 33-40, 50, 59-60, and 94 to Sirmaian, Proposed Order [#57-1]. Defendants lodge a similar objection to these requests based on their inclusion of the term "Borrowers," which Bay Equity has defined as "any past, present, or prospective client of Bay Equity and/or Village." Total Mortgage Req. for Prod. 4 [#58-1]; Sirmaian Req. for Prod. 4 [#58-2]. For example, in Request for Production No. 33 to Total Mortgage, Bay Equity requests "All documents and things concerning any Borrower." Total Mortgage Req. for Prod. 15 [#58-1]

As above, Bay Equity's definition overly broadens the scope of responsive documents to those that pertain only to Village. But insofar as a Village borrower became a Bay Equity borrower following the limited asset purchase, that borrower is a Bay Equity borrower.

In short, as relates to both definitions discussed, this case concerns Total Mortgage and Sirmaian's alleged solicitation of *Bay Equity* employees and use of *Bay Equity's* confidential information to take *Bay Equity's* borrowers. That includes assets that Bay Equity acquired from Village, and to the extent that Defendants' objections are based on where Bay Equity's

confidential information and borrowers originated, the court grants Bay Equity's motion to compel documents responsive to the requests for production listed above. But where Bay Equity seeks discovery regarding *Village's* confidential information and borrowers that Bay Equity did not acquire from Village, the request is overbroad, and the motion is denied.

    C.    *Documents Concerning Loans Started or Closed by Former Bay Equity Employees at Total Mortgage*

The next requests at issue are Bay Equity's Requests for Production Nos. 43-45 to Total Mortgage:

> **REQUEST NO. 43:** Documents sufficient to identify each and every loan any of the Former Employees closed or help to close during their first year of employment with Total Mortgage.
>
> **REQUEST NO. 44:** Documents sufficient to identify each and every loan application that was started by or with the help of any of the Former Employees during their first year of employment with Total Mortgage.
>
> **REQUEST NO. 45:** Documents sufficient to identify all revenues generated by the Former Employees in their first year of employment with Total Mortgage, broken down by month and by borrower.

Total Mortgage Req. for Prod. 17 [#58-1].

Bay Equity states that this information is necessary because otherwise it has "no way of knowing every borrower who may have been moved to Total Mortgage." Pl's Mem. 11 [#58]. Bay Equity also argues that information concerning the former employees' revenues is "critical to determining damages." Id. at 12.

Defendants respond that, as part of its initial disclosures, Bay Equity provided a list of borrowers and prospective borrowers who the former employees worked with during their time at Bay Equity, and Defendants have agreed to provide any documents or communications with any of the individuals on that list. Defs' Opp. 6-7 [#59]. They object, however, to providing

information on Total Mortgage borrowers that Bay Equity has not first identified as having had a business relationship with Bay Equity. Id. at 7-11.

Where Bay Equity's request seeks information not only about loan applications that were started when an employee was with Bay Equity but also about those that were started after the employees moved over to Total Mortgage, the request is overbroad. Bay Equity's Amended Complaint [#3-1] alleges that, as a condition of their employment, "many" of the former Village employees hired by Bay Equity were required to sign an employment agreement containing "the following (or substantially similar) non-solicitation provision:

> Employee hereby expressly acknowledges that the solicitation of, or the origination of a loan for, a consumer for whom a loan previously was processed and closed by Company may result in the imposition against Company of fines, penalties, reimbursements, indemnifications, damages and expenses ("Re Solicitation Losses"). Employee shall under no circumstances solicit any consumer for whom a loan previously was processed and closed by Company during the longer of (i) the twelve (12) month period following the date of such loan closing and (ii) such period as may be specified in the Applicable Requirements of the pertinent lender or investor with respect to the loan, if such solicitation or loan closing would result in a Re-Solicitation Loss to Company.

Am. Compl. ¶¶ 37, 39 [#31-]. To the extent that Bay Equity's requests are limited to loans begun while a former employee was employed by Bay Equity or to loans covered by the non-solicitation provision for those former employees who signed an employment agreement with Bay Equity containing such a provision, those requests are appropriate. And Defendants seem to have agreed to provide any documents or communications regarding any individuals that Bay Equity has so identified in its initial disclosures and has agreed that Bay Equity may supplement that list. Defs' Opp. 7 [#59]. The court sees no basis, however, to permit Bay Equity unfettered access to Total Mortgage's list of borrowers.

D.     *Documents Concerning Disparaging Remarks About Village Following Limited Asset Purchase*

Bay Equity's Requests for Production Nos. 54-55 to Total Mortgage and Nos. 49-50 to

Sirmaian seek the following:

> **REQUEST NO. 54:** All documents and things concerning any representation that any Defendant (including any Former Employee who was – at the time of the communication – employed by or operating on behalf of Total Mortgage) has made to any third party (including any Borrower, Referral Source, or any person who was – at the time of the communication – a Bay Equity or Village employee) concerning Bay Equity and/or Village's organizational or financial health, their ability to serve clients, or their future. This request seeks without limitation all documents and things concerning any statement (in words or effect) that Bay Equity and/or Village is a sinking ship, is going under, that everyone is leaving and coming to Total Mortgage, or that Bay Equity and/or Village is now Total Mortgage.

> **REQUEST NO. 55:** All documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to disparage Bay Equity or Village in the marketplace, including among Borrowers and Referral Sources.

Total Mortgage Req. for Prod. 18 [#58-1]; see also Sirmaian Req. for Prod. 17 [#58-2].

When Defendants objected to producing documents related to Village, Bay Equity

narrowed its requests to remarks made after Bay Equity's limited asset purchase of Village. Pl's

Mem. 13 [#58]. Defendants continued to object, and Bay Equity now asks the court to overrule

Defendants' objection on the ground that, after the limited asset purchase, "it is highly likely that

the Former Employees and third parties referred to Bay Equity and Village interchangeably for

some period [of] time after the purchase because they were seen as one and the same" and "any

disparaging statements that were made about Village after the purchase had the purpose and

effect of hurting Bay Equity's business." Id.

Bay Equity's motion to compel is denied. Total Mortgage has agreed to "produce any

non-privileged documents . . . concerning any representation made by any Defendants

concerning Bay Equity's organizational or financial health, its ability to serve its clients, or its

future." Defs' Opp. 11 [#59]. Defendants have also agreed to search for and produce any such documents "whether or not Bay Equity is directly referenced." Id. at 12. Village was a separate entity from Bay Equity, and Bay Equity has not provided a basis for requesting documents disparaging Village. Bay Equity's highly speculative claim that "players in the marketplace" may have considered Bay Equity and Village to be "one and the same" "for some period of time" does not justify expanding the scope of discovery to cover Village.

E.   *Documents Concerning Strategies to Unfairly Compete with Bay Equity*

Bay Equity's Requests for Production No. 56 to Total Mortgage and No. 51 to Sirmaian seek the following:

> **REQUEST NO. 56:** To the extent not covered by any foregoing request, all documents and things concerning any strategy, plan, effort, scheme, or design to injure or take over Bay Equity's or Village's business, breach the Former Employees' Employment Agreements, misappropriate Bay Equity's or Village's trade secrets and other confidential information, and/or divert business and referral sources from Bay Equity and/or Village to Total Mortgage.

Total Mortgage Req. for Prod. 18-19 [#58-1]; see also Sirmaian Req. for Prod. 18 [#58-2].

As previously discussed, the inclusion of references to Village's business, trade secrets, and other confidential information and efforts to "divert business and referral sources from . . . Village to Total Mortgage" makes Bay Equity's request overbroad. In addition, Defendants contend that no such unfair competition occurred and that they therefore cannot produce responsive documents that do not exist. Defs' Opp. 11 [#59]. Defendants have already agreed to produce documents concerning (1) "the recruitment and hiring of the Former Employees"; (2) "any of Bay Equity's Confidential Information"; (3) any strategy to have the Former Employees take Bay Equity's Confidential Information"; (4) "any of Bay Equity's Borrowers"; (5) any strategy to disparage Bay Equity"; (6) "any strategy to take over Bay Equity's leases"; and (7) any strategy to neglect any borrower file at Bay Equity." Id. at 13. Where Bay Equity has not

defined what additional practices it contends are at issue, the court accepts Defendants'
representations that it has no further responsive documents related to Bay Equity's allegations of
unfair competition. Because the court cannot compel Defendants to produce something that they
do not have, Bay Equity's motion to compel is denied.

F.      *Documents Concerning Defendants' Defenses*

Bay Equity's Requests for Production Nos. 84 and 96 to Total Mortgage and Nos. 79 and
91 to Sirmaian seek the following:

> **REQUEST NO. 84:** All documents and things concerning Scott Penner's sworn
> statement [in an affidavit filed in a related case, see Penner Affidavit, Bay Equity LLC v.
> Total Mortgage Srvs. LLC, No. 20-cv-10454 (March 6, 2020) ECF No. 10] that the
> Former Employees "have built up their client and referral lists through many years in the
> business, all of them long before they worked for Bay Equity . . . ."

> **REQUEST NO. 96:** All documents and things concerning any of Defendants' defenses
> asserted in this Action.

Total Mortgage Req. for Prod. 24, 26 [#58-1]; see also Sirmaian Req. for Prod. 23, 25 [#58-2].
Bay Equity states that the first request "relates to one of Defendants' core defenses in this action;
namely, that borrower information belongs to the Former Employees rather than to Bay Equity."
Pl's Mem. 15 [#58].

As listed above, Defendants have already agreed to produce documents responsive to
Total Mortgage's competitive practices. Defs' Opp. 13 [#59]. This discovery, Defendants
contend, will demonstrate that they "never unfairly competed at all, and that they did not
'misappropriate' any confidential information or 'breach' any agreements." Id. at 12.
Additionally, in their initial disclosures, Defendants state that they "provided documents that
they would rely on to show that they lawfully hired the Former Employees." Id. at 14 n.12. Such
documents appear to cover Defendants defenses. Where Bay Equity has not specified what

additional documents it seeks to compel, the request is overbroad, and the motion to compel is denied.

G.    *Documents Concerning Bay Equity's Limited Asset Purchase*

Bay Equity's Requests for Production No. 98 to Total Mortgage and No. 92 to Sirmaian seek the following:

> **REQUEST NO. 98:** To the extent not covered by any foregoing request, all documents and things concerning the limited asset purchase by Bay Equity of Village, and any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to exploit, capitalize on, or benefit from the purchase

Total Mortgage Req. for Prod. 26 [#58-1]; see also Sirmaian Req. for Prod. 25 [#58-2].

Bay Equity's request is vague and overbroad: it is not clear what documents Bay Equity seeks regarding Defendants' competitive practices or disparaging remarks about Bay Equity that they have not already agreed to produce, and the request for "documents . . . concerning the limited asset purchase by Bay Equity of Village" would include such documents as trade publications covering news of the purchase that are not relevant to this case. The motion to compel is denied.

H.    *Documents Concerning Communications Between Defendants and Third Parties Referencing Bay Equity*

Bay Equity's Requests for Production No. 99 to Total Mortgage and No. 93 to Sirmaian seek the following:

> **REQUEST NO. 99:** To the extent not covered by any foregoing request, all documents and things concerning any communication between or among any of the Defendants and/or Former Employees, on the one hand, and any third party, on the other hand, referencing Bay Equity or Village, including without limitation emails bearing the subject line "Please excuse my previous employer" (in words or effect) or similar emails.

Total Mortgage Req. for Prod. 26 [#58-1]; see also Sirmaian Req. for Prod. 25 [#58-2].

Bay Equity has specified certain search terms, such as "Please excuse my previous employer," but states that its request is not limited to emails carrying this subject line. Pl's Mem. 17 [#58]. Defendants explain that they have agreed to search for any documents with third parties that reference the term "Bay Equity," as well as those with other search terms identified by Bay Equity. Defs' Opp. 17 [#59]. However, Bay Equity moves to compel Defendants to produce documents that "reference" Bay Equity without providing any additional relevant search terms. Pl's Mem. 17 [#58] ("Defendants . . . are unwilling to conduct any other searches and instead maintain that Bay Equity should provide additional search terms for them").

It is unclear to the court exactly what Bay Equity seeks under this request. To the extent that Bay Equity wishes to provide additional search terms that would identify documents that "reference" Bay Equity, it may do so, and it appears that Defendants have agreed to produce documents in response to such a request. But to the extent that Bay Equity is trying to compel Defendants to search through all the documents in their possession without direction, that request is unduly burdensome and not proportional to the needs of the case. In addition, insofar as the request seeks documents that reference Village, the request is overbroad. Given Bay Equity's failure to point to any specific information that is being withheld or additional search terms that would generate relevant documents, the motion to compel is denied.

I.     *Documents Concerning Defendants' Attempts to Conceal Their Misconduct*

Bay Equity's Requests for Production No. 101 to Total Mortgage and No. 95 to Sirmaian seek the following:

> **REQUEST NO. 101:** To the extent not covered by any foregoing request, all documents and things concerning any strategy, plan, or effort by, between, or among any of the Defendants and/or Former Employees to conceal from or avoid detection by Bay Equity or Village, concerning any conduct alleged against any of the Defendants and/or Former Employees in the Amended Complaint.

14

Total Mortgage Req. for Prod. 27 [#58-1]; see also Sirmaian Req. for Prod. 26 [#58-2].

Defendants reiterate that they engaged in no misconduct and that they have already agreed to produce documents relating to all of their defenses. Defs' Opp. 19 [#59]. Again, the court cannot compel Defendants to produce something that they do not have, and it seems that all documents relating to Defendants' defenses are covered under other requests. And to the extent that the request seeks documents related to Village, the request is overbroad. The motion to compel is therefore denied.

### J.   Documents Concerning Denise Peach

Finally, Bay Equity's Requests for Production Nos. 85-94 to Total Mortgage and Nos. 80-89 to Sirmaian seek the following documents concerning Denise Peach:

**REQUEST NO. 85:** All documents and things concerning Scott Penner's sworn statement that "Denise Peach has had no responsibilities to recruit Bay Equity's employees for Total Mortgage and was not involved in the hiring of any former employees of Bay Equity. Accordingly, she has not received any compensation related to Total Mortgage's hiring of former Bay Equity employees."

**REQUEST NO. 86:** All documents and things concerning Denise Peach's sworn statement that Bay Equity's allegations concerning her involvement in the Bay Equity lift-outs "are not true."

**REQUEST NO. 87:** All documents and things concerning Denise Peach's sworn statement that she "had no involvement whatsoever in the recruitment of any Bay Equity employees to Total Mortgage" and that she "did not learn that those employees were even coming to Total Mortgage until after they had already tendered their resignations with Bay Equity."

**REQUEST NO. 88:** All documents and things concerning Denise Peach's sworn statement that she "did not speak to any of the Bay Equity employees about joining Total Mortgage prior to their leaving Bay Equity" and "ha[s] not been involved in any way with their onboarding or supervision since they have joined Total Mortgage."

**REQUEST NO. 89:** All documents and things concerning Denise Peach's sworn statement that she "had absolutely nothing to do with [Bay Equity's former employees] joining [Total Mortgage] or any of their work at Total Mortgage since they have joined."

**REQUEST NO. 90:** All documents and things concerning Denise Peach's sworn statement that she "ha[s] no idea whether [Bay Equity's former employees] have any contracts or agreements with Bay Equity" and "[t]he first [she had] ever heard of such contracts was when [she] received the Complaint . . . ."

**REQUEST NO. 91:** All documents and things concerning Denise Peach's sworn statement that Peach "ha[s] not seen any of [Bay Equity's former employees'] employment agreements, and do[es] not know who, if anyone, is subject to any employment agreements with Bay Equity."

**REQUEST NO. 92:** All documents and things concerning Denise Peach's sworn statement that she "ha[s] certainly not encouraged anyone to breach any contract or agreement that they might have with Bay Equity."

**REQUEST NO. 93:** All documents and things concerning Denise Peach's sworn statement that she "ha[s] not and will not receive any additional compensation, bonus, or other personal benefit as a result of any former Bay Equity employees joining Total Mortgage."

**REQUEST NO. 94:** All documents and things concerning Denise Peach's sworn statement that she "was not at all involved in [Bay Equity's former employees'] hiring."

Total Mortgage Req. for Prod. 22-25 [#58-1]; see also Sirmaian Req. for Prod. 23-25 [#58-2].

Peach was a Village employee who never worked for Bay Equity. Mem. & Order 2-3 [#35]. On December 15, 2020, this court granted Peach's Motion to Dismiss for Fraudulent Joinder [#13]. Id. at 11. The court found that, following denial of its motion for a temporary restraining order in a related federal case, Bay Equity voluntarily dismissed that federal case and then filed a substantially similar complaint in Middlesex Superior Court, this time naming Peach, a Massachusetts resident, as a defendant. Id. at 1-2. The court concluded that Bay Equity had failed to state any claims against Peach and that it had joined her in an effort to defeat removal to federal court based on diversity jurisdiction. Id. at 4-11. Where Peach was dismissed from this action with prejudice due to Bay Equity's failure to adequately plead that she had any involvement in the events at issue, the motion to compel is denied.

**IV.     Conclusion**

Bay Equity's <u>Second Motion to Compel Discovery</u> [#57] is GRANTED IN PART and

DENIED IN PART as specified herein.

IT IS SO ORDERED.

September 9, 2021                                    <u>/s/ Indira Talwani</u>
                                                    United States District Judge